946 So.2d 640 (2007)
INDIAN TRAIL IMPROVEMENT DISTRICT, Appellant,
v.
DEPARTMENT OF COMMUNITY AFFAIRS and Palm Beach County, Appellees.
No. 4D05-4379.
District Court of Appeal of Florida, Fourth District.
January 24, 2007.
Mark E. Grantham of Hunton & Williams, L.L.P., Atlanta, Georgia, for appellant.
David L. Jordan and Leslie E. Bryson, Tallahassee, for Department of Community Affairs.
Edward P. de la Parte, Jr., David M. Caldevilla, and Nicolas Q. Porter of de la Parte & Gilbert, P.A., Tampa, and Amy Taylor Petrick, Assistant County Attorney, West Palm Beach, for Palm Beach County.
FARMER, J.
Palm Beach County adopted a comprehensive land use plan (CLUP) in 1989. Until 2004, its plan generally did not allow the County to provide or subsidize freshwater and wastewater services to the unincorporated rural areas. In 2004, it amended its CLUP to designate the County as the service provider of freshwater and wastewater to the unincorporated portions of the county. Over the objections of a special taxing district (and others) that provided such services in unincorporated Palm Beach County, the Department of Community Affairs (DCA) has lately approved the amendment as being in compliance with the County's chapter 163 duties *641 and obligations. We affirm and write only to address the issue of the objector's standing and a substantive issue of "aspirational policy making."
Indian Trail Improvement District (ITID) is an independent special district created by the Legislature in 1957. Since 1998 it has operated a freshwater and wastewater system within the unincorporated areas of Palm Beach County. Actually ITID does not itself originate its own potable water or treat wastewater. It obtains freshwater from the City of West Palm Beach and another special district to supply its customers. Similarly it has contracted with the City for bulk treatment of its customer's wastewater.
To have standing to appeal agency action, a party must be "adversely affected by final agency action." § 120.68(1), Fla. Stat. (2006). As one who was providing the same services before the County adopted the amendment in question, we think ITID is manifestly a party who has been "adversely affected" by the approval. The fact that this party is also a public entity, a special taxing district, does nothing to change the nature of the consequences flowing from having another provider of the same services within its service area. In particular, ITID pointed to its own plans for expansion of its services as something directly affected by now having the County in "competition" to provide the same future services. We do not agree with the County that some direct impact on real property is required to show an adverse effect. That is certainly the way a party usually must demonstrate standing to appeal final agency action, but in this instance it is by no means the exclusive method. We agree with ITID that the reasonably foreseeable future operational and planning consequences of the County's CLUP amendment give it standing to pursue this appeal.
ITID primarily attacks the amendment as lacking appropriate data to support it. See § 163.3177(8), Fla. Stat. (2005) and Fla. Admin. Code R. 9J-5.005(2) (both generally requiring CLUP amendments to be based on relevant and appropriate data and analyses applicable to each element). DCA has evolved a policy of review that does not always require "the same amount or type of data for all [CLUP] amendments." As the order states:
"For example, if amendments merely represent a policy or directional change and depend on future activities and assessments (i.e., further analysis and decision-making by the local government), the Department does not require the degree of data and analyses that other amendments require. (These amendments have sometimes been referred to as aspirational amendments. . . . )"
The agency went on to add:
"Thus, under Department interpretations of the relevant statutory and rule provisions, if an amendment does not have an immediate impact on the provision of services in the unincorporated area, is policy-based, does not require any capital improvement expenditures at the time the amendment is adopted, and simply represents a directional change in the County's long-term water utility planning, it is similar to an aspirational amendment and can be based on less data and analyses than might otherwise be required.
"Here the County's actual policy regarding utility service areas will depend on future activities and assessments. The Amendments do not require the County to take any immediate action. The Amendments do not mandate that *642 existing utility customers in the [rural service area] switch to the County."
DCA also noted from evidence produced in the record that the failure of the County itself to be a provider had created a "void" in long range utility planning resulting in duplicative service lines, inefficient services in the rural service area, overlapping utility jurisdictions, and an absence of written agreements defining service availability areas.
We are unable to find error in DCA's analysis. Some matters of policy are obviously not susceptible to numerical computation. The preservation of a specific natural resource, for one example, may not involve an issue of overuse by too many people, but instead whether to have any use at all. Similarly, issues of duplication of services, inefficiency in providing utility services, and overlapping jurisdictions, may not yield in a meaningful sense to arithmetical calculations. Some issues simply involve abstract conceptsunlike, e.g., questions of specific population.
One of the very reasons for having administrative agencies decide some applications of policy is to allow for human perceptions. This does not mean that the rule of law gives way to a rule of individuals. It simply means that some questions are not dominated by algebraic equations but instead must be informed by human judgment of elected officials. Their judgment is then subjected to agency review under established methods, principles, and standards by officials having expertise in the subject. That agency properly defers to the County's judgment and intervenes only when there is a palpable misapplication of governing law. In this case the judgment of the County officials is within the governing law, and the review by DCA conducted within its special expertise plausibly found no basis to disapprove the County's action.
Affirmed.
GUNTHER, J., and DAMOORGIAN, DORIAN, Associate Judge, concur.